I'm Brent Hart appearing on behalf of the appellant James Allen. If I could reserve two minutes for rebuttal. I will do my best to watch your time, but you'll be ultimately responsible for your time. No problem. The basis of our appeal is that Judge Zille clearly erred when determining whether a Franks violation had occurred in this case. A clear error occurs after the court has reviewed the entire body of evidence. The court is left with a definite and firm conviction that a mistake has been committed. And our claim, of course, in the Franks briefing is that there were material omissions in the search warrant affidavit prepared by Detective Betts that weren't in the report, that weren't in the certification. I really pared down the list as there were additional things that were omitted, but I wanted to keep to the really important ones in this case. There was no mention that when officers investigated further Ms. Ramsey's claims that guns had been fired, they went around, they asked neighbors whether or not they heard gunshots. Neighbors told Detective Fagan that they actually had not heard gunshots. That's really critical in this case. I guess I'll summarize first and then go through each one in more detail. There was no mention in the affidavit that there was a backpack that Ms. Ramsey tried to hide, and that backpack later turned out to have drug paraphernalia in it. There was no mention in the affidavit that Ms. Ramsey had a warrant for her arrest. How is the backpack material? Maybe you can go through each of them. I know you have a number, so let's just go quickly because your time is limited. I will. The backpack is material because it had evidence of drug paraphernalia. But the affidavit in this case had a lot of evidence that Ms. Ramsey had used drugs the night before. She'd been convicted, I think, of a drug conviction. The fact that a backpack would have had drug paraphernalia, I'm just trying to figure out how is that material. It's not like they were trying to hide that this woman had issues related to drugs. Well, I think what it does, I mean, first of all, it wasn't just drugs. There was a scale in there. There were things in there that not only showed that she might have been using drugs, but also that she might have been involved in the actual dealing of drugs. You know, it's important. I think it just paints the total picture of what was actually happening. What does that go to, her credibility, the statement she made? Right, I think it goes to her credibility. And I also think that, I mean, the whole theory of the defense in this case was, I mean, I think the Commissioner is entitled to know this, is that she made up a story about Mr. Allen, that there was a fight over something. That gets you to the gunshots, huh? What? I'm sorry? I said that gets you to the gunshots. That gets us to the gunshots. Right. That didn't happen that day. You know, she makes a 911 call. There's two very brief calls. She doesn't even say who, she doesn't even identify herself, and yet police are able to ascertain exactly who it is. The reason why, of course, they know that is because they've come out there before. So, you know, the, and then the fourth. We have backpack gunshots, but you jump down to the fourth. What's the third? Oh, I'm sorry. I had that as my, so no mention that the guns had not been heard was one. Two was no mention that, of the backpack, and I'm sorry, three, was no mention that she actually had an active warrant out for her arrest. This is more important just after officers are there. I mean, certainly once, you know, she makes a 911 call, then officers are there, you know, then it becomes important because, you know, once officers are there, she's got a real risk that she could be arrested, and yet that's nowhere mentioned in the arrest, excuse me, nowhere. Why isn't that without force because they did know that she had a charge pending against her for a false statement? I'm sorry, can you repeat that? I didn't understand the question. Why isn't that irrelevant because the police did know that she had a charge against her for a false statement? It's important because she's going to have an extra motivation once the police are physically present to embellish, to make herself seem right, so that she doesn't get arrested, so she doesn't go to jail. And then, of course, there's also no mention of perhaps the most important fact, is that the actual substance of the false reporting charge itself involved James Allen in this case. Detective Vander Weist spoke with Ms. Ramsey, and, of course, we know from that conversation that he did discover the fact that Mr. Allen was the listed victim in that case. He told them so in the interview more than two hours before the search warrant affidavit was sent to Commissioner Moon. Detective Vander Weist never, well, either never mentioned that fact to Detective Betts, and he had to have known that Detective Betts was preparing a search warrant, and yet didn't find that to be an important enough fact to alert Detective Betts, or Detective Betts did know about it and simply didn't include it in his affidavit. Under either of those circumstances, I mean, it is obviously a big deal if she has a false reporting charge that involves Mr. Allen listed as a victim in this case. What's your best authority for that? That it's obviously a big deal? Well, I mean, I don't have a case directly on point where there's a false statement charge involving a victim in the case, but I would say that what it shows, I mean, look, it's a materiality. Well, but they did know that it was a false statement charge, and I think the case is then, I think there is a case file that was cited by somebody here. I thought it was you, maybe it was the Assistant U.S. Attorney. It says you omit a false statement charge when there is a false statement charge. That can be significant, but here they didn't omit that there was a false statement charge. It was the twist here, and I'm just trying to figure out if it's a significant enough twist, is that it involved a false statement charge against Mr. Allen, but it appears when you look at the four corners of the search warrant, it paints a pretty clear picture of the very difficult relationship that the two had, the tremendous drug issues that both of them had. And so I'm just trying to figure out, especially in cases of domestic violence, it seems like law enforcement and the judges and everybody seemed to appreciate involved these kind of back and forth sort of allegations, and so why is it material here? Well, it's material because it just, as it appears in the actual search warrant affidavit, it just makes it sound like it's a general false statement charge. That could be regarding anything. That could be, you know, a false statement about, you know, who she was. In this case, it turns out that the explanation in this case regarding the false statement charge is that, according to the police who interviewed Ms. Ramsey, that Mr. Allen had intimidated her into recanting an abuse complaint. So I'm not sure if that helps you or not. Does that help you if that had been included? Well, I think it does, because at the very least what it would have done is alerted Commissioner Moon that there was an issue regarding her making false statements against somebody else. Now, that's not what happened. Counsel? Counsel, let me take this from a different angle. Suppose the magistrate was informed that there was a 9-11 call from a woman who falsely reported gunshots. She tried to hide a backpack that had evidence of drug using and petty drug dealing in it. She was a liar, and she previously lied about Allen. That's putting everything in the strongest light for your client. Would there still be probable cause here? No, I don't think so, because the sole witness in this case that's reporting gunshots is Ms. Ramsey, and there has to be some indicia of reliability. And when you throw those facts in there, including that she lies about Mr. Allen in the past, the fact that her story is not corroborated by anybody, the fact that she had an active warrant for her arrest, and the fact that she actively tried to hide a backpack just before they were at the house. When was it that, was it before or after the warrant issued that Allen said, if you find a gun in there, she will have planted it? I believe that was before, but I'm out of time. Okay. Thank you.  May it please the Court. My name is Michael Morgan. I represent the United States in this matter. The threshold question here is whether or not the district judge clearly erred in finding, as a matter of fact, that neither the defiance nor any of the detectives on the scene either recklessly or deliberately disregarded information material to the warrant application. On every single point, the judge found the officers credible and found that they neither deliberately nor recklessly omitted any information. And the district court did so because the officers' testimony on this point was uncontradicted. Counsel? Counsel? Yes. We all understand that a pure heart doesn't really do the trick here and that the information of all the officers has to be considered. If I consider the information from all the officers, then despite the view of the judge that everybody, each individual officer, told them the truth, why wouldn't it matter to an issuing magistrate if he got information that the woman had tried to hide a backpack with drug paraphernalia and dealing paraphernalia in it that she lied to the 9-11 dispatcher or whatever they call it, receptionist, about gunshots that she'd lied before to get Alan in trouble? Why wouldn't that matter in the magistrate's evaluation? Well, I'll certainly answer that question, but there's a – you don't have to get to that question unless you're prepared to find the district court made clear error in crediting the officers' testimony that, in fact, they were unaware of that information. Now, with respect to – No, I don't think so. I think the problem with the statement you just made is the word they. Bets was aware of some things, and he was, I guess, in his office writing, and Vander Weiss was aware of other things, and he was on the scene listening. And between the two of them, they do appear to have been aware, even though no one individual appears to have lied to the court. No, I understand that. And just very quickly is we understand the court found that Bets, the affiant, did not know most of the facts about which you're talking. He did know about the changing story of the 9-11 call, which was, in fact, included in the affidavit. The affidavit itself made – Let's say – let's try to address the question I raised. Suppose the magistrate, the issuing magistrate, had known all these things. Why would they not have mattered to his evaluation? Okay. Well, then we're going to the materiality, and I guess I'll answer them individually. With respect to the backpack, the backpack was found to have contained some empty baggies, a scale, and some drug-smoking paraphernalia. Well, the affidavit disclosed that the complainant, the victim, had used methamphetamine the previous evening and had a conviction for methamphetamine. So the fact that she had a drug issue was known. It's also relevant that every single officer who spoke with her at the scene – Well, scale – Excuse me? The scale matters. She might – the scale matters. She might be Alan's competitor. I – there's no evidence in the record to suggest that she had anything to do with drug dealing. Yeah, there is. The scale. Okay. But still, I guess my point is that that's a theory that – I mean, all the time when the prosecutor and the U.S. – the prosecutor and the DEA are on the other side, they say the scale is evidence of drug dealing. Okay. But if she was drug – So I don't – But she has no drugs. So she's dealing nothing? I understand the Court's point that a digital scale is one of the indicia of drug dealing. I do get that. But there's no other indicia that she was engaged in that activity. But – It's ordinarily the government's point, and ordinarily it's enough. I don't know. Maybe you should give it – try the others. Tell me why it wouldn't have mattered. Okay, but – Hold on, wait. You say it's the government. I'm sorry. I just want to clarify. Whose burden is it here? It's the defendant's burden. Okay. But it's also relevant for the backpack. You have to get the timing of that, too. Remember, the backpack is discovered literally one minute before the officer submits his warrant affidavit. So you can't impute that to the affiant. There's simply no time for the affiant to have known that when he submits the affidavit. With respect to the identity of – well, let's talk about the identity of Mr. Allen being the victim of the false statement charge. Well, everyone involved here admitted in the district court that if they had known that, they would have included that in the affidavit. Betz admitted that. But the problem is that Betz didn't know it. And Vander Weist was never asked about it at the first hearing. And at the second hearing, when asked, said, I don't remember whether I told him that or not. So the district court credited Betz and said he didn't know. So if he didn't know, he couldn't have been, you know, deliberate or reckless in failing to include it. But doesn't Weist's knowledge – Vander Weist's knowledge count, too? It does, but the district court found that Vander Weist did not deliberately or recklessly withhold it. At most, Vander Weist might have been negligent, but that's not enough for Franks. With respect to materiality, the reality is, is that what Vander Weist was told, and this is what he would have relayed, was that there was a false statement charge that arose because Ramsey recanted under pressure from Allen. That's what would have been disclosed in the affidavit. That would have actually tended to mitigate the false statement charge because it would have explained it away. As it is now, the magistrate knows that she has a pending charge for making a false statement to a public official, has no idea what the circumstances are. Was that some established fact that that's why the – that's what the false statement amounted to? She was intimidated into recanting? That is what – Or is that just a theory at this point? No, that is what she told the detectives during her audiotaped interview. It's at pages ER 3-1-12 to 3-14. That's what she told the officers. So that's what the officers knew. That's what would have been relayed to Betz. That's what would have been conferred in the affidavit. So the magistrate – Wait, new and told are two different things. People tell me a lot of things, but if they're liars, I don't know those things. Well, when they're being told this, this is what the officers were told. The record shows that nobody at the time knew the actual circumstances of the false statement charge. Nobody had those records. At the time they were applying for this affidavit, they just don't know. So the officers can only relay what they know. And they're not at fault if someone gives them false information. That's not the officer's problem. The officers can only be truthful with what information they have. And in that circumstance, again, the magistrate would have had the false statement charge explained away. It would have been a DV recant, which everyone would have just sort of said, oh, okay. I mean, that's not an excuse. You shouldn't falsely accuse someone for that. But it does explain. How about the outstanding warrant on the false statement charge? The district judge was clearly correct in the materiality of it. That doesn't add anything. Having a bench warrant doesn't speak to one's truth-telling ability. And as the district court pointed out, it actually tends to bolster her credibility because she was taking the chance that she was going to be arrested. And, in fact, she actually told the officers in her audio tape statement that one of the reasons why she hadn't reported an earlier incident with Alan was because she knew she had this outstanding warrant and she didn't want to get arrested. But this time, the incident was just too violent and she was prepared to take that risk. So had that fact – well, I should back up. That fact, the district court found, was disclosed in the affidavit, albeit obliquely. But nevertheless, even if it had been more clearly stated, it simply would have just – it would have added very little. In fact, it would have actually bolstered the credibility. So that is not what we normally think of as being the kind of material that you can, you know – there's a problem for not disclosing that kind of material. And the neighbors? We don't really know it was too violent because if somebody had me scared for my life, I don't think I'd go back to their house for my cell phone charger. Well, I agree to a certain extent, although I should point out that's not an issue that's being raised. That's been waived at this point. But the point of the matter is that, you know, someone – My point was just that your epistemology is poor. You keep saying what people know when you know it's not quite fair. Well, I guess what I say with no is that the officers only know what they see and are told. And the officers saw was physical corroboration of her claim to have been choked, namely that her neck was red. And so there was actually physical corroboration of her account. Now, that in and of itself tends to bolster the claimant's credibility. And, again, that was in the affidavit. Let me ask you – you don't have much time left, but let me ask you a little bit different question. I think one of the points in the appellant's brief is that when the officers, I think before executing the warrant, became aware of certain facts, they had the obligation to then report that to the magistrate before the execution of the warrant? Yes, Your Honor. The claim that's being raised is that prior to executing the warrant, the officers learned the identity that Mr. Allen was the victim of the false statement. The district court found, as a matter of fact, that at the end of the second hearing, that the detective did not, in fact, know that prior to executing the warrant. And the record firmly supports that contention. Betz never spoke to – actually, let me take that back. Betz was questioned about what he told – what he was told by the court. Betz specifically testified that, I was not informed of this when I went to execute the warrant. Billy was questioned about what he said when Betz arrived at the warrant. They didn't discuss the circumstances of the underlying false statement charge. The only thing they discussed was Ramsey's claim that Allen had tried to run her down the night before. So what are you saying? One of the other officers may have known about it, but there's no evidence that Betz was told about it? That's right. There's no evidence that he was told about it when he got there to execute the warrant, so there was no reason for Betz to think that he would have needed to stop and go back to the magistrate. And as we explained in our brief, and for the reasons I had just discussed, even if he had known, he wouldn't have had to go back because it wasn't a material fact, unless the Court has any further questions. Well, so you're saying, really, we don't even have to reach the issue of materiality? That's correct, Your Honor. That missing link of whether Betz didn't know. That's correct, Your Honor. And the district court found that as a matter of fact. Thank you, Your Honor. Thank you. I'll give you a minute. Or did you have two minutes? Did you have? No. Okay. I didn't think so. Okay. Come on up. Well, you know, Vander Weiss certainly knew that there was a, that the warrant involved Ms. Ramsey and Mr. Allen. But there's no evidence that he told Betz that Betz knew. Well, that's, I mean, you know, I raised the claim because there was an actual finding in, you know, Judge Zilley's initial hearing that, you know, that he did discover that. So, you know, I threw that in the brief. But, I mean, I've got to tell you, the Court here, I have to say, you know, the bigger issue is Vander Weiss definitely knew about the warrant, definitely knew about the fact that the case involved Ms. Ramsey and Mr. Allen, and that Mr. Allen was a listed victim. And yet, even though he learned that hours before, either never told Betz or did tell Betz and Betz didn't include it in his affidavit. And, you know, we can't just evidence launder here. Right? I mean, we can't just. No, we can't. I thought there was a finding made that Detective Betz didn't know about this. Well, it's. You just said right now that Detective, or at least infer that Detective Betz knew about it. I thought there was a finding that he didn't. In the second hearing, that's correct. In the first hearing, Judge Zille found that, you know, minutes before he actually executed the warrant that he did find it. So I included it in the warrant, but, you know, I actually can't find anything that supports that finding. So I'll take counsel at his word as far as that goes. But Vander Weiss clearly knew. That happened for sure. And so, you know, the fact that he knew that hours beforehand and didn't disclose that at any point, that this is a case that actually involves Mr. Allen as a listed victim, I mean, that's a big deal. It shows that she lies about him. She lies about him. You know, she, of course, minimized the reason why that she was lying about him. I mean, that happens in false statement cases. Commissioner Moon should have had the opportunity to know about that and do further research and figure out whether or not this is actually something that he's going to order. Thank you. Thank you both for your arguments. The case is now submitted.
judges: KLEINFELD, TASHIMA, MURGUIA